## Harry Oster v. The People.

1.  CONTEMPT OF COURT—*Requisites of the Order.*—An order in a proceeding for contempt of court imposing a fine and imprisonment is not necessarily void because it fails to provide to whom the fine shall be paid.

2.  SAME—*Answer of Defendant May Be Contradicted.*—In a proceeding for contempt of court in a chancery suit, the answer of the defend-

Oster v. The People.

ant may be contradicted and disproved by the adverse party, but a different rule prevails in proceedings for contempt of court in suits at law.

3. SAME—*Punishment, When Not Excessive.*—Where a receiver of a court, necessarily trusted and relied upon, was found guilty of permitting merchandise, placed in his hands as such receiver, to be clandestinely taken and carried away by his employes for the purpose of defrauding the estate and its creditors, a fine of $300 and imprisonment four months in the county jail was held not to be excessive.

**Proceedings for Contempt of Court.**—Error to the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed March 25, 1901. Rehearing denied.

MYER S. EMRICH, attorney for plaintiff in error.

ROSENTHAL, KURZ & HIRSCHL, attorneys for defendant in error.

MR. JUSTICE WINDES delivered the opinion of the court.

This case is error to reverse an order punishing plaintiff in error for contempt of court. Aside from the form of the order committing and fining plaintiff in error, the claim that his answer purged him from contempt, and that the punishment is excessive, only questions of fact are presented for our consideration. We will consider these questions in the order stated.

The order by which plaintiff in error was found guilty of contempt, committed to jail and fined, after the usual formal recitals of the hearing and his failure to show cause, proceeds as follows:

"The premises considered, it is therefore ordered and adjudged by this court that said Harry Oster be imprisoned in the common jail of Cook county, Illinois, for the term of four (4) months from this date, unless he be sooner discharged by due process of law; and furthermore he hereby is for said contempt fined in the sum of three hundred dollars ($300), and will stand committed to the common jail in Cook county, Illinois, until said fine be paid, unless he be sooner discharged by due process of law, and such commitment for non-payment of said fine to be not concurrent with said four months in prison, but to commence when such four months cease."

Then follows an order to the sheriff to take Oster into custody and for the enforcement of the court's order.

It is contended that the order is erroneous because it fails to provide to whom the fine should be paid, and certain decisions of this court hold that this is error. Smith v. Tenney, 62 Ill. App. 576; McDonald v. People, 86 Id. 558.

In the Smith case it was held cause for reversal, but in the other case it was not. At the time these cases were decided, though presumably decided with reference to the statute, it fails to appear that the attention of the court was directed to paragraphs 269 and 270, of Chap. 122, Hurd's Stat. 1899, which provide, in substance, that all fines in courts of record shall, when collected, be paid to the county superintendent of schools of the county wherein such fines have been imposed, and it is the duty of the state's attorney of such county to enforce the collection of such fines and pay them over to the county superintendent. In view of these provisions of the statute we think our former decisions, while laying down a salutary rule as to the requirements of an order of commitment for contempt, and are supported by the authorities, should be so far modified that it should not be held reversible error in a case like the one at bar, that the order fails to designate the person to whom the fine should be paid. The statute providing where fines shall go, supplements the order of the court and makes it sufficiently definite to enable Oster to know to whom to pay the fine.

The claim that Oster's answer to the rule to show cause, being a complete denial of the charges made against him, purges him from contempt, is not tenable. The Welch case, in 30 Ill. App. 400, and the Buck case, 60 Ill. 105, which are cited in support of the contention, do not sustain it. The former case is at common law, and recognizes that a different rule prevails in chancery. The latter case is a chancery case and holds that the "answer may be contradicted and disproved by the adverse party." This states the rule that prevails in chancery. Loven v. People, 158 Ill. 166; Crook v. People, 16 Ill. 536.

Oster v. The People.

We do not think that the punishment of Oster, under the circumstances shown by this record, can be said to be excessive. He was the receiver of the court and necessarily trusted and relied upon by the court, and if guilty, as is found by the court, of permitting to be taken and carried away by his employes, merchandise placed in his hands as receiver, for the purpose of depriving the estate committed to his charge of said merchandise and of defrauding said estate and its creditors thereof, then the punishment was merited.

It only remains to consider the question of facts as to whether the evidence shows that Oster was guilty, as found by the court.

It appears that one Peter Klein, who was a partner of Martin Winkler, the firm name being Winkler & Klein, filed his bill against Winkler for an accounting and the appointment of a receiver, and that by consent of the partners the plaintiff in error, Oster, was, July 12, 1900, appointed receiver of the assets of the firm, directed to take possession thereof and to continue the conduct of the firm business as theretofore conducted by it, in the ordinary course of wholesale notion business, at a compensation of $20 per week, and upon a bond of $40,000. The order gave him full power to employ all such help, agents and attorneys required as necessary to aid him in the discharge of his duties. He proceeded at once to the performance of his duties as such receiver and among other help employed both the partners and Morris Winkler, the father of said Martin Winkler, and allowed the partners to have practical charge of the business, though he says he "generally O-K'd every order before it was filled. * * * O-K'd all the orders." After the first week he turned over the keys of the store where the business was conducted to said Morris Winkler, except upon Saturday of each week, when said Morris did not work, and then the keys were taken by Martin Winkler, one of the partners. While the business was being thus conducted, and on, to wit, Sunday, the 5th day of August, 1900, goods to the value of about $800 were clandestinely taken, under the direction of

said Peter Klein, from the store where Oster, as receiver, carried on business, and stored, part of them in the home of one Greenwald, and some of them in Klein's house, for the purpose of secreting them and depriving the firm estate of the goods. Oster was not present when the goods were taken from the store, but he knew that they were to be taken, and assented thereto.

Upon the hearing of a rule to show cause against Oster and others, why they should not be attached for contempt of court, which was entered pursuant to the petition of certain creditors, Peter Klein, in substance, testified, among other things, that Oster, some ten days ' before the hearing and some time before the goods were taken, agreed with Klein that in order to protect Martin Winkler's brother Albert, who was a creditor of the firm, he, Oster, would allow $1,000 worth of the firm goods to be removed from the store, and only charge Winkler's brother $200 therefor, and that it was pursuant to this agreement the goods in question were taken from the store, it being understood at the time between him, Klein and Albert Winkler, that if said Klein and Winkler and Oster should thereafter form a partnership, negotiations as to which were then pending between Winkler, Klein and Oster, though not to be closed unless a settlement with the partnership creditors of Winkler and Klein should be accomplished at fifty cents on the dollar, then the goods should be taken back into the store again after the partnership should be formed.

Albert Winkler, the brother of Martin Winkler and the man to be mainly benefited, testified in substance that he was present when the agreement testified to by Klein was made with Oster; that he was willing to make the agreement; and when asked the question, " You accepted his offer ?" answered, " Yes, I did not say either yes or no. Nothing at all." He also testified that he talked with Oster about it at another time.

Martin Winkler, the partner of Klein, testified that Klein told of the agreement, as he knew it, but says he " was not present when the agreement was made with them and Mr.

Oster v. The People.

Oster.  I had absolutely no knowledge of that whatever. This was when the agreement was made to take the goods away.  I did not know that $1,000 worth of goods were going to be given for $200; learned it afterward ; " that he didn't have anything to say about it; that "Mr. Klein and Mr. Oster made the agreement.  I didn't take any of the goods out after that.  It was before this that the goods were being taken out."  Klein testifies that only he, Oster and Albert Winkler were present when the agreement was made.

Oster, both in his answer to the rule to show cause and in his testimony, testified that he made no such agreement as that stated by the other witnesses, and denies all knowledge that the goods were to be taken out, or that he gave any assent thereto, but does admit that there were negotiations with regard to a partnership between him, Winkler and Klein; that he went so far as to secure the consent of his brother-in-law and brother, out of friendship for him, to indorse notes to the amount of $10,000 to enable Winkler & Klein to make a settlement with their creditors preliminary to such partnership, and that Martin Winkler and Peter Klein had talked to him after his appointment as receiver, and some two or three weeks before the hearing, about securing some goods to protect themselves, and that he said to them, " they should not attempt to do such a thing.  I advised them not to do any such things.  *  *  * I gave them to understand that I did not think they could do anything of that sort; they should not do it."  He also says that he said to them, " Don't do any such things of that sort.  You can not do any such things."  He also admitted that he told Albert Winkler, when spoken to by the latter in regard to his claim, that " he should not lose the money."

Notwithstanding Oster admits that Winkler and Klein had talked with him as above stated about taking goods to protect themselves, he permitted Winkler's father to carry the keys of the store all the time that Martin Winkler did not carry them, which was Saturday and sometimes Sunday.

We think, in view of the evidence of the two Winklers and Klein and the admissions of Oster in his testimony as above set out, notwithstanding the denials of his sworn answer, the chancellor was justified in finding that Oster made the agreement testified to by Klein and assented to the taking of the goods from the store for the purpose of depriving the estate of Winkler & Klein and their creditors thereof.

We deem it unnecessary to consider the point made by counsel for plaintiff in error, that the chancellor erred in denying Oster an appeal, because he has had every benefit under this writ of error that he could have had by appeal.

The order of the Circuit Court is affirmed.